IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| EVGUENI ROUDACHEVSKI, D.O. * | |
| * | |
| Plaintiff * | |
| * | |
| V. * | |
| * | NO: 4:11CV00230 SWW |
| ALL-AMERICAN CARE CENTERS, * | |
| INC. d/b/a ALL-AMERICAN CARE * | |
| OF LITTLE ROCK * | |

**ORDER**

On March 1, 2011, Evgueni Roudachevski, D.O. ("Dr. Roudachevski") commenced this suit in state court against All-American Care Centers, Inc. ("All-American"). All-American removed the case to federal court. For reasons that follow, the Court *sua sponte* raises the issue of federal subject matter jurisdiction and directs All-American to provide any additional information regarding the amount in controversy by Tuesday, March 22, 2011 before 3:00 p.m.

**I.**

The following facts are taken from the complaint. Dr. Roudachevski is an osteopathic doctor, who began treating patients at Parkview Rehabilitation Center ("Parkview") in 2008. All-American purchased Parkview in November 2009, and changed the facility's name to All-American Care of Little Rock ("AACLR"). After All-American's purchase, Dr. Roudachevski continued to treat patients at AACLR, and as of February 23, 2011, he had patient-physician relationships with 68 AACLR residents.

On February 24, 2011, Dr. Roudachevski received a letter from Jerry Rhodes, All-American's CEO, informing him that his practice at AACLR was terminated for enumerated

reasons, including (1) failure to clear discharge decisions with nursing administration, (2) failure to attend utilization review meetings, (3) failure to clear medication orders with nurse managers, (4) failure to assign an APN rather than an LPN for follow-up care, (5) failure to interact with doctors for patients going to other hospitals, and (6) failure to attend quality assurance, family council, and safety committees.

After All-American terminated Dr. Roudachevski's practice at AACLR, it reassigned his patients to other physicians, without consulting him.  The family members and guardians of several AACLR residents want Dr. Roudachevski to continue his services at AACLR, but All-American has announced that residents who wish to continue seeing Dr. Roudachevski must transfer to another facility.

On March 14, 2001, Dr. Roudachevski commenced this action in state court asserting tortious interference with contract and business expectancy and violation of the Arkansas Deceptive Trade Practices Act ("ADTPA").  By way of relief, Dr. Roudachevski seeks compensatory and punitive damages and attorney fees.  He also seeks preliminary and permanent injunctive relief [1] (1) allowing him access to his patients who are residents of All-American Care, (2)  preventing All-American from interfering or disrupting his relationships with his patients who are residents of All-American Care, (3)  directing All-American to recognize, preserve, and promote a resident's right to the physician of their choice, and (4) preventing All-American from engaging in the unlawful corporate practice of medicine.

---

[1]Counts IV of the complaint seeks declaratory relief and Count V seeks preliminary and permanent injunctive relief.  However, declaratory and injunctive relief are remedies rather than separate causes of action,

**II.**

"It is a verity that federal courts are courts of limited jurisdiction. Parties may not enlarge that jurisdiction by waiver or consent. Likewise, a court may not assume 'hypothetical jurisdiction' to decide 'contested questions of law when its jurisdiction is in doubt.'" *Arkansas Blue Cross and Blue Shield v. Little Rock Cardiology Clinic, P.A.,* 551 F.3d 812, 816 (8th Cir. 2009)*(quoting Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). The Court is under an independent obligation to examine the notice of removal to determine whether subject matter jurisdiction exists, and issues of suspect subject matter jurisdiction must be resolved before the case can move forward.[2]

An action is removable to a federal court only if it could have been brought there originally. *See* 28 U.S.C. § 1441(a). Here, All-American asserts in the notice of removal that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the action is between citizens of two different states, and the amount in controversy exceeds $75,000.

Although diversity of citizenship between the parties is apparent, the complaint allegations reveal a serious issue regarding the amount in controversy. All-American, the party invoking federal jurisdiction, has the burden to prove the requisite amount by a preponderance of the evidence, and in a case removed on the basis of diversity of citizenship, a federal court does not have subject matter jurisdiction if it appears to a legal certainty that the value of the plaintiff's claim is less than the required amount of $75,000. *Advance America Serv. of Ark., Inc. v. McGinnis*, 526 F.3d 1170, 1173 (8th Cir.2008) (citations omitted).

All-American asserts that the amount in controversy exceeds $75,000 because Dr.

---

[2]Removal statutes are strictly construed, and any doubts about the propriety of removal are resolved in favor of state court jurisdiction and remand. *See Wilkinson v. Shackelford*, 478 F.3d 957, 963 (8th Cir.2007).

Roudachevski seeks injunctive relief, and he alleges in his complaint that the value he places on the rights he seeks to protect exceeds $75,000. In a suit for declaratory or injunctive relief, the amount in controversy is the value to the plaintiff of the right that is in issue. *See Usery v. Anadarko Petroleum Corp.*, 606 F.3d 1017, 1018 -1019 (8th Cir. 2010). Although this principle is sometimes referred to as the "plaintiff's viewpoint rule," it does not mean that a plaintiff's subjective view of what the asserted right is worth is controlling. "The question is not how a plaintiff subjectively values a right or even what his or her good-faith estimate of its objective value is: The question is the actual value of the object of the suit." *Id.*; *see also Thomson v. Gaskill,* 315 U.S. 442, 447 (1942)(quoting *Wheless v. St. Louis*, 180 U.S. 379, 382 (1901))("In a diversity litigation the value of the 'matter in controversy' is measured not by the monetary result of determining the principle involved, but by its pecuniary consequence to those involved in the litigation.").

From Dr. Roudachevski's perspective, the pecuniary consequence of the matter in controversy is his ability to earn professional fees by treating his patients who reside at AACLR. Dr. Roudachevski alleges that before his termination, he was scheduled to provide services to his AACLR patients every Tuesday and Thursday as needed. He further alleges that he has already suffered $5,000 in damages and that "absent emergency relief . . . actual damages will continue to accrue and will eventually exceed the amount required for federal jurisdiction." Compl., ¶ 63.

The presence of the requisite jurisdictional amount is determined as of the time of removal, and it cannot be determined by speculation regarding the potential value of a judgment in either party's favor. *See New England Mortg. Sec. Co. v. Gay,* 145 U.S. 123, 130, 12 S. Ct. 815, 816 (1892). Speculative amounts and contingent losses are not properly included in the

amount in controversy. *See Wabash Ry. Co. v. Vanlandingham*, 53 F.2d 51, 52 (8th Cir.1931). Here, Dr. Roudachevski does not allege that he has a present right to earn professional fees from AACLR residents, and the allegation that he will eventually suffer more than $75,000 in damages, absent emergency relief, is too speculative to satisfy the amount in controversy requirement.

Dr. Roudachevski alleges that his actual damages as March 14, 2011 were approximately $5,000, well below the jurisdictional requirement. Furthermore, while punitive damages are included in determining the amount in controversy, a general request for punitive damages does not relieve All-American's burden to establish removal jurisdiction by a preponderance of the evidence. *See State of Mo. ex rel. Pemiscot County, Mo. v. Western Sur. Co.* 51 F.3d 170, 173 (8th Cir. 1995)("When determining the amount in controversy, we scrutinize a claim for punitive damages more closely than a claim for actual damages to ensure that Congress's limits on diversity jurisdiction are properly observed.").

In the notice of removal, All-American merely states that Dr. Roudachevski seeks punitive damages, which may be recovered in an action for interference with a contractual relationship and for violation of the ADTPA. In the complaint, Dr. Roudachevski seeks punitive damages for tortious interference with contractual relationships and business expectancies. However, the complaint is void of allegations charging that All-American acted maliciously or with the deliberate intent to injure Dr. Roudachevski, the showing required to recover punitive damages under Arkansas law. *See L.L. Cole & Son, Inc. v. Hickman,* 282 Ark. 6, 13, 665 S.W.2d 278, 282 (1984).

Finally, All-American notes that Dr. Roudachevski also seeks attorney's fees pursuant to

5

the ADTPA, Ark. Code Ann. § 4-88-113(f), which provides that any person who suffers damage or injury as a result of violation of the statute may recover reasonable attorney's fees. Here, there is no indication that a potential reasonable attorney fee award will total an amount necessary to push the amount in controversy over the $75,000 threshold.

### III.

Based on the current record, the Court finds that the amount in controversy does not exceed $75,000. However, before the Court remands this case back to the state court from which it was removed, the Court will provide All-American an opportunity to submit further briefing on the issue of the amount in controversy.

IT IS THEREFORE ORDERED that Defendant is directed to brief the Court, before March 22, 2011 at 3:00 p.m. as to why this case should not be remanded to the Circuit Court of Pulaski County, Arkansas for lack of subject matter jurisdiction.

IT IS SO ORDERED THIS 18TH DAY OF MARCH, 2011.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE